REGAN v. FOSDICK.

(Supreme Court, Appellate Term, First Department. February 26, 1897.)

1. LANDLORD AND TENANT—HOLDING OVER—LIABILITY FOR DOUBLE RENTS.
    2 Rev. St. (9th Ed.) p. 1819, § 10, making a tenant liable for double rent when he holds over after giving notice of intention to quit, applies only to tenancies for an indefinite period, and the giving of such notice creates no rights or liabilities when the tenancy expires at that time by its own terms. 42 N. Y. Supp. 471, reversed.
2. SAME—IN OBEDIENCE TO AUTHORITIES—LIABILITY.
    A tenant is not liable for rent for a period longer than his actual occupation nor at a higher rate than his lease names where health officers forbid his removal at the expiration of his lease and he removes as soon as the authorities permit.

**3. SAME—IMPLIED ELECTION TO RENEW TENANCY.**
　　A landlord has no option to adopt a holding over by a tenant as an election
　　to renew the tenancy, where the holding over is not voluntary, but in obedi-
　　ence to orders of health officers forbidding removal.

**4. SAME—COVENANT TO REMOVE—BREACH EXCUSED.**
　　An order of health officers forbidding removal excuses failure to perform a
　　previous covenant by a tenant to remove from and surrender the premises.

Appeal from city court of New York, general term.

Action by James Regan against William Fosdick to recover rent.
From a judgment of the city court (42 N. Y. Supp. 471) affirming a
judgment for plaintiff rendered by the trial court, defendant appeals.
Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Arthur E. Walradt (Joseph M. Keatinge, of counsel), for appellant.
William H. Knox, for respondent.

McADAM, J.　The defendant was a tenant of the plaintiff under
a written lease which expired May 1, 1896.　About April 12, 1896,
his child Elliott was taken sick with scarlet fever, and so continued
to May 18th following.　The case was reported to the bureau of con-
tagious diseases of the board of health, and Dr. Woodend, one of the
inspectors of the bureau, took charge of it, and issued an order to
the defendant that he should not leave the premises "until the child
was through desquamating," and he had ordered the premises to be
fumigated.　The defendant, on the trial, put in evidence without
objection a certificate issued by Chief Inspector Benedict of the health
department, dated June 12, 1896, as follows:

"To Whom It may Concern: This is to certify that Elliott Fosdick, three years
of age, son of William Fosdick, residing at 65 East 124th street, was reported at
this office on the 15th of April as suffering with scarlet fever.　From that date
until the 18th of May the premises of Mr. Fosdick were under the surveillance of
the board of health, and the removal of the patient, or any of the infected furni-
ture or belongings, was prohibited by the board of health until such time as the
necessary fumigation and disinfection should be performed.　This fumigation and
disinfection was performed on the 18th of May, and at that time the board of
health relinquished control of the patient and of the premises."

The day following this relinquishment of control by the board, the
defendant moved from the premises to another dwelling which he
had previously hired.　The action was commenced by the service
of a summons May 6, 1896, to recover $150 double rent under the
statute, on the theory that as, by the terms of the lease, the rent was
payable monthly in advance, the tenant, by holding over, had made
himself liable, not only for the May rent at the agreed rate, but for
double that amount, because he had given notice to the landlord on
March 15, 1896, of his intention to quit the premises the following
May 1st, and had not kept his promise.　The statute under which
the plaintiff seeks to recover double rent (2 Rev. St. [9th Ed.] p. 1819,
§ 10) provides:

"If any tenant shall give notice of his intention to quit the premises by him
holden, and shall not accordingly deliver up the possession thereof at the time in
such notice specified, such tenant * * * shall, from thenceforward pay to the
landlord * * * double the rent which he should otherwise have paid, to be
levied, sued for and recovered at the same time and in the same manner as the

single rent, and such double rent shall be continued to be paid during all the time such tenant shall continue in possession as aforesaid."

This is substantially a re-enactment of the English statute 11 Geo. II. c. 19, § 18, and relates only to a tenancy where the term is indefinite, and the tenant has the right, and seeks by notice to terminate the tenancy. Sections 7, 8, and 9 of our statute relate to tenancies at will or by sufferance, showing the act was intended to apply to such tenancies only; and that is the construction given to it by the authorities. See Woodf. Landl. & Ten. (Am. Ed., Notes by Webster) 749; 2 Tayl. Landl. & Ten. (8th Ed.) § 529; Clarke, pp. 760, 761; Kingf. Landl. & Ten. p. 196; Redman & L. Landl. & Ten. (4th Ed.) pp. 433, 434. Where the term is definitely fixed, the tenancy expires ex vi termini, and the giving of notice to quit is a work of supererogation, which furnishes no rights and creates no liabilities. It is clear, therefore, that the defendant is in no event liable for double rent under the statute.

The rule undoubtedly is that where a tenant holds over and continues in possession after the expiration of his term, the landlord ordinarily has an election of remedies. He may treat the tenant as a trespasser, by instituting proceedings to eject him; or he may hold him as tenant on the terms of the original demise. See Oussani v. Thompson (opinion filed this day) 43 N. Y. Supp. 1061. The landlord, not having chosen the former remedy, ought to have declared on the new agreement created by the tenant's conduct and the landlord's election, or alleged the facts, leaving such new tenancy to be implied, in which case the rent, if any, recoverable, would be $75, the monthly rent reserved in the original lease. The landlord adopted neither of these courses. We are aware that ordinarily a holding over by reason of sickness is not a defense to such an action for rent as under the original demise. Haynes v. Aldrich, 133 N. Y. 287, 31 N. E. 94; Herter v. Mullen, 9 App. Div. 593, 41 N. Y. Supp. 708. But here the defendant was prevented by the act of the law from moving out; and, if he became liable for anything, it was at most for the use and occupation of the premises for the time he actually occupied them, and, as liability to this extent is conceded by the tenant, we are relieved from an expression of opinion upon the precise extent of the liability. The theory upon which overholding tenants are held to have renewed their tenancies at the option of the landlord is that they cannot allege their own wrongdoing in defense. There is no room for the application of this doctrine here, because the defendant relies upon grounds essentially different, to wit, obedience to the health laws of the state, and regulations made under them,—a defense at once substantial and meritorious. The tenant did not have the option of moving. He was not a free agent, but was coerced by legal authority to remain. The board of health, by virtue of its plenary power of regulating contagious diseases, had taken possession of the premises, which were thereby placed for all practical purposes in the custody of the law until after the fumigation and disinfection on May 18, 1896; and, as soon as the law permitted, the tenant vacated the premises, and the landlord regained possession. The defendant could do no more. True, the tenant was under covenant to move on

May 1st; but the rule is that if A. covenants to do a thing which is lawful, and an act of parliament comes in, and hinders him from doing it, the covenant is repealed.   See Brewster v. Kitchell, 1 Salk. 198; Corporation of the Brick Presbyterian Church in City of New York v. Mayor, etc., of City of New York, 5 Cow. 538.  This is because the covenantor is excused from performance by act of the law, for it would be seemingly absurd to require one to do that which the law forbids his doing.   See Jones v. Judd, 4 N. Y. 411; Lorillard v. Clyde, 142 N. Y., at page 462, 37 N. E. 489; Heine v. Meyer, 61 N. Y. 171; Wolfe v. Howes, 20 N. Y., at page 201.   It is the province of the legislature to determine what is best for the public good, and to provide for it by proper enactments.   Usually either by general law or by municipal charters very extensive powers are conferred upon local boards of health, under which, when acting in good faith, they may justify themselves in taking possession of, purifying, or even destroying the buildings or other property of the citizen when the public health or comfort demands such strong measures.   Van Wormer v. Mayor, etc., 15 Wend. 262; Coe v. Schultz, 47 Barb. 64; Cooley, Const. Law (5th Ed.) *584.   In Board v. Heister, 37 N. Y. 661, it was decided that chapter 74 of the act of 1866, creating the metropolitan sanitary district of the state of New York, was constitutional, and that the act did not violate that provision of the constitution which declares that "trial by jury in all cases in which it has been heretofore used shall remain inviolate for ever," nor that article which provides that "no person shall be deprived of life, liberty, or property without due process of law."  In Re Ryers, 72 N. Y., at page 7, the court, referring to an act relating to the public health, said:  "There is scarcely any one object that has been the subject of more enactments than this, or as to which more power is given to officials over the citizen and his property, and by more summary proceedings." See, also, Sedg. St. & Const. Law (2d Ed., Pomeroy's Notes) p. 437. The authority of the legislature in the exercise of its police powers cannot be limited or restricted by the provisions of contracts between individuals.  "Pacta privata publico juri derogare non possunt." Buffalo E. S. R. Co. v. Buffalo St. R. Co., 111 N. Y., at page 140, 19 N. E. 63.  "Laws and regulations of a police nature, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbances.   They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner.   If he suffer injury, it is either damnum absque injuria, or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure."   Health Department of City of New York v. Rector, etc., of Trinity Church, 145 N. Y., at page 43, 39 N. E. 836.

The legislature has, by the consolidation act of 1882, conferred upon the board of health of the city of New York the following, among other, powers:

Section 552: "No person shall remove any sick person from any vessel or from any other place without written permit for that purpose, granted by the president or one of the members of said board" (of health).

Section 555: "It shall be the duty of the board of health * * * to forbid and prevent all communication with the house or family infected with any contagious, infectious, or pestilential disease except by means of physicians, nurses, or messengers to carry the necessary advice, medicines, and provisions to the afflicted."

Under these comprehensive provisions the board had the power, not only to prevent the removal of the defendant's sick child from the demised premises, but to forbid any person other than physicians, nurses, and messengers to enter thereon, if, in its judgment, such prohibition was essential to the security of the public health. The contingency which arose is one that every landlord and tenant may have to meet, and their contracts must be construed with reference to the laws designed to meet it, so that each of the parties may bear his share of the misfortune as well as he can.

The Penal Code contains the following provisions:

Section 396: "A person who willfully opposes or obstructs a health officer or physician charged with the enforcement of the health laws, in performing any legal duty, is guilty of a misdemeanor."

Section 397: "A person who willfully violates any provision of the health laws, the punishment for which is not otherwise prescribed by those laws or by this Code; and a person who willfully violates or refuses to comply with any lawful order or regulation prescribed by any board of health or health officer, or any regulation lawfully made or established by any public official under authority of the health laws, is punishable by imprisonment not exceeding one year, or by a fine not exceeding two thousand dollars, or both."

These severe penalties might have been imposed upon the defendant if he had violated the order of the board of health; and he very properly yielded obedience to it. Persistence would have been useless, as well as criminal. The claim that such obedience entitled the landlord to treat the defendant as a tenant for a new term finds no warrant in the law, and does not commend itself to judicial approval. It has, indeed, been held in Rex v. Vantandillo, 4 Maule & S. 73, that an indictment for nuisance would lie against a person "for knowingly, unlawfully, and injuriously conveying a child sick of the smallpox through the public street," thus exposing passengers to the infection. And Le Blanc, J., after explaining that the court did not intend to pronounce that every person who inoculated for this disease was guilty of an offense, provided the patient was kept from the society of others, so as to prevent a communication of the disease, said: "But no person having a disorder of this description upon him ought to be publicly exposed to the endangering the health and lives of the rest of the subjects." See, also, Boom v. City of Utica, 2 Barb., at page 109.

Whether the condition of the defendant's child was such as justified or prevented its removal with safety was a question directly within the jurisdiction of the health board, and it had undoubted power in the presence of danger to act summarily upon its own inspection and knowledge, without affording a hearing to the persons directly affected; and the propriety of its order, while not open to question then or now, may be the subject of judicial review in appropriate proceedings by or against the board or its officials who executed the order. People v. Board of Health of City of Yonkers, 140

N. Y. 1, 35 N. E. 320; Board of Health v. Copcutt, 144 N. Y. 12, 35 N. E. 443; In re Smith, 146 N. Y. 68, 40 N. E. 497.  It is necessary that such power should exist somewhere, to be exercised whenever the emergency arises, without the delays which unavoidably attend formal judicial investigations.  In Pickett v. Bartlett, 107 N. Y. 277, 14 N. E. 301, the defendants were lessees of a bonded warehouse under a lease for one year from November 1, 1880, the lessees covenanting to surrender at the end of the term, to pay the rent for the term, and "for such further term" as they might hold the premises. Bonded goods belonging to defendants, and placed in the warehouse before the expiration of the term, were left there until December 23, 1881, in consequence of defendants' inability to remove them without the consent of the government officials.  On that day the government locks were removed, the goods taken away, and the keys of the buildings were left at a place designated by plaintiff.  Plaintiff, claiming that by the holding over he had the right to elect to hold the lessees for another year under the terms of the lease, brought his action to recover the rent.  The court said:

"The lease related to a bonded warehouse, which, by the provisions of law, must, while occupied in that character, be used solely for the purpose of storing warehouse merchandise, and be placed in charge of an officer of the customs, who, together with its owner and proprietor, should have the joint custody of all the merchandise stored therein.  Rev. St. U. S. § 2960.  Its use was subject to governmental regulation, and it was, as to receipt, storage, and delivery of merchandise from it, altogether removed from the control of the lessee."

This federal statute no doubt influenced the court in deciding that the holding over by the tenants did not imply a new hiring by them for another year, although the landlord attempted to give it that far-reaching effect.

While the lease in the present case does not contain any provision as to the possibility of the defendant or his family being afflicted with a contagious disease while on the premises, the contracting parties knew, when they entered into the agreement, that just what happened might occur, and they must be held to have contracted with reference to the laws of the state which regulate and control in such a contingency.  If the board of health had not assumed control of the premises, and they had not passed, as it were, into the custody of the law, the doctrine laid down in Haynes v. Aldrich and Herter v. Mullen, supra, might be applied.

To understand intelligently the positions taken by the parties at the trial, and the rulings of the court thereon, it is necessary to refer to the following colloquy which occurred at the close of the case:

"Mr. Knox: I move for a direction, and that the jury find for the plaintiff in this case.  Mr. Walradt: I move for a direction for the defendant.  The Court: What authority has the board of health to take a man's house without paying rent?  (The defendant's attorney replied that his client was obliged to comply with the orders of the board of health.)  The Court: The board of health has no more authority than any other corporation to take a man's property without paying for it.  (The court stated that it would limit the pay to double rent for the first nineteen days in May; that is, for the time he [the tenant] actually occupied the premises.)  Mr. Walradt: I move, your honor, to limit the recovery to the time actually occupied as for use and occupation for the nineteen days admitted to be occupied by the defendant, on the theory that the holding over was not

willful, but was for causes beyond the defendant's control, and that, therefore, the most that the plaintiff could recover is for use and occupation. The Court: The defendant justifies the holding over under authority and compulsion of the board of health, which I say is not sufficient, and does not release him from the penalty provided for by the statute."

The court thereupon directed the jury to find a verdict in favor of the plaintiff for $95, being double rent for the 19 days; to which direction the defendant duly excepted. The direction was clearly erroneous, and the exception well taken.

It follows that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.