Richmond.

GRICE V. TODD.

March 15, 1917.

1. LANDLORD AND TENANT—*Tenancy From Year to Year—Holding Over.*—A tenant gave his landlady three months' notice that he would vacate at the expiration of that year of his tenancy. At the expiration of the year he was compelled to hold over for three days because, although he endeavored to obtain them, he was unable to get wagons to move his effects. On the fourth day he vacated the premises, and sent the keys to the landlady's agents. The landlady then elected to hold the tenant as a tenant from year to year by reason of his having held over as aforesaid. As the tenant's holding over was not voluntary, a contract of tenancy from year to year could not be implied, as no obligation will be implied in law from an act which is not voluntary. Furthermore, the facts show, not only that the action of the tenant in holding over was not voluntary, but in addition that the landlady had actual notice brought home to her of the express declaration of the tenant that he held over involuntarily, excluding any idea of further contract, before the mind of the landlady assented to the tenant's remaining over. A meeting of the minds, therefore, was impossible.

2. ASSUMPSIT—*Equitable Nature of Action Upon Quasi-Contract.*—An action of assumpsit upon a quasi-contract—which is the action in the instant case—is equitable in its nature. No recovery will be allowed in such an action which does violence to natural equity.

3. LANDLORD AND TENANT—*Holding Over—Notice of Intention to Vacate.*—Where a notice is given by a tenant of an intention to vacate under the Virginia statute (Code, section 2785) before his lease expires, such notice does not differentiate the case from any holding over by a tenant after the expiration of his term, where the holding over is after the date named in the notice when the premises should have been vacated.

61

Error to a judgment of the Law and Equity Court of the city of Richmond, in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*George Bryan,* for the plaintiff in error.

*S. A. Anderson, E. V. Farinholt* and *R. R. Florance,* for the defendant in error.

SIMS, J., delivered the opinion of the court.

The facts in this case are agreed and are as follows:

"It is agreed that E. W. Grice was a tenant of Mrs. Mary V. Todd of the premises 509 W. Franklin street, Richmond, Virginia, under lease hereto attached, as part hereof, and held over for one year thereunder, which year expired August 31, 1914; that he gave three months' notice to her that he would vacate at said expiration of said year; that he held over for three days after August 31, 1914, because, although he endeavored to obtain them, he could not get wagons to move his effects on August 31, 1914, to the apartment to which he wished to move; that on September 4, 1914, he vacated said premises, and sent the keys to the agents named in the lease and that then said Mrs. Mary V. Todd elected to hold him as a tenant from year to year by reason of his having held over as aforesaid; that the said Grice denies his liability as such tenant; that the parties to these proceedings further agree that this matter shall be submitted to the judge of this court for his decision and judgment in this suit, a jury being waived."

It appears from this statement of facts that the case before us is not one where there was a holding over of the

tenant beyond the expiration of the term of his lease *without more*. The holding over of the tenant was for three days caused by his inability to obtain wagons to move his effects, although he endeavored to obtain them. He vacated the premises on the fourth day after the expiration of his lease and tendered the keys of the premises to the landlady. The latter *then* elected to hold the former tenant as a tenant from year to year "by reason of his having held over *as aforesaid*," not by reason of his having held over, *without more*.

Such situation presents, in effect, a case where, after the term of the lease expired, the former tenant held over, but gave notice to the landlady, explaining his possession on the ground that it was caused by circumstances over which he had no control, before the landlady exercised her right of election.

The judgment of the court below was for the landlady, plaintiff therein, the appellee here, against the former tenant, defendant therein, the appellant here.

We think there was error in the judgment of the trial court for the reasons hereinafter pointed out.

That judgment would have been right if this had been a case where there was a holding over of the possession by the former tenant, *without more*.

The uniform view of the American text-writers and authorities on the subject, where the doctrine of tenancy from year to year is recognized, is that when a tenant, who has previously rented for a term of years, or for one year, holds over possession of premises beyond his original term, without more, upon the election of the landlord to hold him as a tenant from year to year, the law implies a contract on the part of the tenant to remain and pay rent as a tenant from year to year. His holding over puts the tenant in the position of being in wrongful possession against the landlord. Such possession of the tenant is wrongful, but

for technical reasons he is not yet a trespasser. He holds over by the laches of the landlord, who may enter at any time and put an end to the tenancy. Until the landlord takes some action in the matter, the former is a tenant by sufferance. In such situation, while the tenant is a tenant by sufferance, the landlord has the right of election to allow or refuse to allow the tenant to remain. The landlord may exercise the latter right, and if he does, from that moment the tenant is a trespasser and may be ejected. If the landlord exercises the former right, he may do so in such express terms that the latter remaining in possession will become a tenant at will. But as the law does not favor a tenancy at will, it will not imply a contract necessary to create such a tenancy. In the absence of evidence of such an express contract, if the landlord exercises his right of election to allow the tenant to remain, without more, the law implies a contract on the part of the landlord that the tenant may remain as a tenant from year to year, such a tenancy being favored by the law in the interest of a mere permanent tenure than that of a tenancy at will. Conversely, and for the same reason, where there is a holding over by the tenant, *without more*, and while such holding over exists, upon the election by the landlord aforesaid, the law implies a contract on the part of the tenant to remain and pay rent as a tenant from year to year. That is to say, in such situation, the contract creating a tenancy from year to year, whether on the part of the tenant or landlord, is implied in law, from the voluntary acts of the parties, in the absence of any agreement. I Washburn on Real Prop. (6th ed.), sec. 800, 825-6, 829; 1 Minor on Real Prop., sec. 386, 389; 1 Taylor on Landlord and Tenant (9th ed.), secs. 19, 22; Jones on Landlord and Tenant, secs. 201-209; 24 Cyc. pp. 1011-1014; 53 L. R. A. (N. S.) 235; note to 16 Va. L. Reg. 496.

It is true that in a situation of a holding over of the former tenant, without more, very slight acts or act on the part of the landlord, which may be even inferred from a very short lapse of time, will be sufficient to conclude his election and make the person holding over his tenant, when the landlord is himself relying on the renewal agreement (Jones on Landlord and Tenant, sec. 205) ; but the election, however evidenced, must be exercised by the landlord before the obligation which the law implies on the part of the tenant arises.

However, in the instant case, we are relieved of any consideration of what act or acts of the landlady were sufficient to evidence her election by the agreed statement of facts, which concludes that question by the affirmative statement that the landlady did elect as aforesaid and when she so elected.

It is also true that, in the situation referred to in the next preceding paragraph, the tenant has no such right of election as the landlord has. As to the latter, "his mere continuance in possession fixes him as a tenant from year to year, if the landlord thinks proper to insist upon it." (16 Va. L. Reg., p. 496, note; 1 Taylor on Landlord and Tenant, *supra,* sec. 19.) Or as another writer puts it, concerning the contract of the former tenant to remain as a tenant from year to year, which the law implies from the mere act of the former tenant of holding over "* * * in reality the presumption is one of law, which cannot be rebutted." Jones on Landlord and Tenant, sec. 210. The authorities also hold that the intention of the former tenant in holding over is immaterial.

All of the foregoing is true because the contract of the tenant, which is implied in law, from his holding over beyond the term of his former lease, is really not a contract in fact, although spoken of as such. The relationship of the parties is *quasi ex contractu.* "The liability" (of the

tenant) "exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. In this class of cases the notion of a contract is purely fictitious. There are none of the elements of a contract that are necessarily present. The intention of the parties in such case is entirely disregarded. * * *" 2 R. C. L., sec. 8.

Such an obligation may be implied in law not only without the existence of an intention to create it, but even against a contrary intention, if equity and good conscience demand it; as in case of a tort, theft, forcible taking of property (2 R. C. L., secs. 14, 15) or fraud (*Idem.*, sec. 18), or mistake, and in other cases.

With respect to both tenant and landlord, in the absence of express agreement, the law deals with the conduct of the respective parties in the light of the situation and attitude of the parties to each other, and implies a contract between them or an obligation of the one to the other, where *ex aequo et bono*, according to the principle on which the action of assumpsit is founded, it should be implied. If, however, the parties protect themselves from the contract or obligation which the law would imply in the absence of agreement between them, by express agreement, or by notice the one to the other followed by action thereon from which an express agreement may be ascertained, the law will not do violence thereto by implying an agreement in contravention thereof.

Similarly, "The law * * * will not imply a promise against the express declarations of the party to be charged, made at the time of the supposed undertaking, unless such party is under legal obligation, paramount to his will, to perform some duty." 4 Cyc., p. 326. And he is not under such legal obligation unless there is a demand in equity and good conscience that he should perform the duty.

The English rule is the same as that above referred to as prevailing in America, to the extent that the obligation of the tenant arising from his holding over, without more, is one implied in law, upon the exercise by the landlord of his right of election aforesaid, regardless of the intention of the tenant. *Right on, &c.,* v. *Darby,* 1 T. R. 159; *Bishop* v. *Howard,* 2 B. & C. 100, 9 E. C. L. 41; *Sauvage* v. *Dupress,* 128 Eng. Rep. Reprint 163; *Dougal* v. *McCarthy,* 1 Q. B. 736; *Digby* v. *Atkinson,* 4 Camp. 275; *Riggs* v. *Bell,* 5 D. & E. Rep. 471.

There are other cases which indicate that in England the holding of the courts is more liberal than in America upon the inquiry as to when the obligation of a tenant holding over will be implied in law (see English cases referred to by the text-writers above cited) ; but there is no difference between the rule in England and America that whenever the obligation is implied in law, it is implied regardless of the intention of the tenant. The law supplies the intention whenever it imposes the duty, but then only. This is a distinguishing characteristic of an obligation implied in law which is universal. It inheres in the very nature of it.

The inquiry, therefore, in the instant case, whether the tenant had in fact the intention to hold over the premises from year to year is immaterial, both on principle and upon authority. But the true inquiry is: Was the situation of the parties, which was known to each other, and their conduct, such that the law will imply a contract or obligation on the part of the tenant to hold over as a tenant from year to year? Will the law impose such duty on the tenant in such situation?

As we said in the case of *City of Norfolk* v. *County of Norfolk,* 120 Va. 356, 374, 91 S. E. 825: "The fiction of an implied promise will not be indulged in every case, but only where in equity and good conscience the duty to make such a promise exists."

An action of assumpsit upon a *quasi* contract—which is the action in the instant case,—is equitable in its nature. No recovery will be allowed in such an action which does violence to natural equity. Where an express contract, although not made, might possibly have been made by the parties, in their situation with regard to and dealings with each other and consistently therewith, or if not consistently therewith, in equity and good conscience it should have been made, the law will impose the duty and imply the necessary promise or promises to create such a contract or obligation; but not where the facts expressly proved in a case negative such possibility and also negative the existence of any demand in equity and good conscience that such a promise should have been made. That, as we stated in the case last cited, "would be in itself inequitable." *Idem;* see also 2 R. C. L. on subject of assumpsit. In such case there would be no legal obligation on the tenant paramount to his will as shown by his express declarations. 4 Cyc., *supra.* Hence the duty in question would not be imposed by the law.

In the instant case, the action of the tenant holding over was not voluntary according to the agreed statement of facts. If this was a mere pretense on the part of the tenant, or if the situation relied on by him to excuse his action as involuntary was brought about by his own default in the matter of making due efforts to provide a means of removal, so as to estop him from reliance thereon, the appellee might have taken issue upon the alleged necessity of the situation in which the tenant claimed to be placed. But by the agreed statement of facts we are relieved from any consideration of whether the action of the appellant was in truth involuntary. The agreed statement concludes this fact.

No obligation will be implied in law from an act which is not voluntary. 2 R. C. L., sec. 8; *Herter* v. *Mullen,* 159

N. Y. 28, 53 N. E. 700, 44 L. R. A. 703, 70 Am. St. Rep. 517; *Regan* v. *Fosdick,* 19 Misc. Rep. 489, 43 N. Y. Supp. 1102.

Further:

The facts expressly proved in this case show not only that the action of the tenant in holding over was not voluntary, but in addition that the appellee had actual notice brought home to her of the express declaration of the tenant that he held over involuntarily, and hence contrary to any idea of further contract, before the mind of appellee assented to the tenant's remaining over. In this situation of the parties, a meeting of their minds upon a contract in fact was impossible, and, in equity and good conscience, in this situation, there was no demand that the tenant should make such contract; hence, the tenant was under no legal obligation paramount to his will, as shown by his express declaration, to make such contract. Therefore, the law will not in such a case imply such obligation.

The American cases on the subject of the contract implied in law from the circumstance of the holding over of the former tenant beyond the expiration of his term are very numerous. Many of them are cited in the briefs of counsel for appellee and appellant; many are collated in 53 L. R. A. (N. S.), 235, note, and by the text-writers above cited. We do not find that any of such cases, which are thus cited or collated, upon examination, are in conflict with the conclusion above reached but one, and that is the case of *Mason* v. *Wierengo's Estate,* 113 Mich. 151, 71 N. W. 489, 67 Am. St. Rep. 461. In the last named case it was held:

"The fact that a tenant for a term of years becomes seriously ill shortly before the expiration of his term, and after removal operations have actually begun, does not deprive the landlord of his right to treat the tenant's failure to complete the removal before the lease expires as a renewal of the lease for another year."

62

The holding in that case manifestly violates the principle upon which an obligation will be implied in law. This principle has been sufficiently discussed above and need not be again adverted to here.

The case of *Haynes* v. *Aldrich,* 133 N. Y. 287, 31 N. E. 94, 28 Am. St. Rep. 636, has also been called to our attention. That was a case where the tenant held over for three days after the end of the year on account of the illness of a boarder of a sub-tenant. There was also some other question as to whether the holding over was voluntary or involuntary on account of difficulty in procuring trucks or wagons for removal of tenant's effects, but under the facts of that case the court held that the holding over was voluntary, and that the tenant was liable for rent for another year. But there the lease contained a provision that the premises should be occupied as a private dwelling and a covenant not to sublet without the written consent of the lessor; and the tenant, without permission, had rented the premises to the sub-tenant, a boarding house keeper. Here this breach of covenant was a distinguishing feature in the case, operating against the tenant by way of estoppel, preventing his relying upon the incident of illness which arose, since it was because of his breach of covenant that this hindrance to his delivery of possession was made possible. The court reserved its decision upon the case of an involuntary holding over in no way the fault of the tenant.

There are a few other cases where the obligation in question has been held as implied in law, where there were positions taken by the tenant and notice thereof given to the landlord which, if they had occurred after the tenant's term expired, would have been inconsistent with the possibility of any contract in fact to create a tenancy from year to year, but these positions were taken *before* the prior term of the tenant expired, and the holding over thereafter was unaccompanied by any notice to the landlord of any

controlling necessity which rendered the action of the tenant involuntary (as in the instant case) before the landlord exercised his right of election aforesaid—hence the holding over was left, as in other cases of holding over without more, for the law to act upon.

It should be noticed further that we do not discuss the circumstance that in the instant case a notice was given by the tenant under the statute in Virginia, before his lease expired, because under the authorities (53 L. R. A., N. S., note, *supra*) it seems clear that such a notice does not differentiate the case from any holding over by a tenant after the expiration of his term, the instant case being a holding over after the date named in the notice when the premises should have been vacated.

Upon the whole case, therefore, for the reasons given above, we are of opinion that there was error in the judgment complained of, and it will be reversed.

*Reversed.*