## Richmond

WAREHOUSE DISTRIBUTORS, INCORPORATED v. PRUDENTIAL
STORAGE AND VAN CORPORATION.

April 22, 1968.

Record No. 6571.

Present, All the Justices.

*Leonard D. Levine* (*Comess & Levine*, on brief), for plaintiff in
error.

*Maurice Steingold* (*Steingold, Steingold & Chovitz*, on brief), for
defendant in error.

SNEAD, J., delivered the opinion of the court.

Warehouse Distributors, Incorporated, plaintiff, sought a judg-
ment against Prudential Storage and Van Corporation, defendant, for

$8,282.40 which plaintiff claimed it was due because of unpaid rent and damage done to a warehouse it had leased to defendant. At the conclusion of plaintiff's evidence the trial court sustained defendant's motion to strike plaintiff's evidence and entered summary judgment for defendant. Plaintiff's single assignment of error is addressed to this action of the court.

The motion for judgment alleged that Warehouse Distributors had leased to Prudential property known as 1122 Billings street in Norfolk to be used as a warehouse and freight depot; that on or about November 25, 1965, Prudential vacated and abandoned the demised premises "without proper notification * * * and without plaintiff's consent" in violation of the terms of the lease; that during defendant's tenancy the building was damaged in that window glass was broken, the plumbing and heating systems were "stripped", masonry was cracked and wall panels were broken and removed; that the liability for such damage in the amount of $3,032.40 rested "solely with the defendant", and that defendant owed $5,250.00 for rental of the premises.

Prudential, in its answer and grounds of defense, denied that it vacated the premises in violation of the terms of the lease and that any rent was in arrears or owed. Defendant also denied that it was liable for any damage to the building, disputed the amount of damage, and alleged that none of the damage occurred while it had possession of the premises.

The record consists of the pleadings, exhibits and the testimony of three witnesses called by plaintiff. A trial without the intervention of a jury was had on July 20, 1966. The plaintiff first called Arthur Peregoff, a former officer of Warehouse Distributors, who testified as to the lease agreements made between Warehouse Distributors and Prudential. His testimony and the pertinent contents of the exhibits may be summarized as follows:

On or about July 16, 1957, the parties executed an undated instrument whereby plaintiff leased its Billings street warehouse to defendant for a term of five years beginning April 1, 1958, and ending March 31, 1963, at a monthly rental of $1,250.00 payable in advance.

The lease contained, among other things, the following provisions:

"Seventh.—Tenant will during the term keep and at the expiration thereof deliver up said premises in as good order and condition as the same now are, reasonable wear and tear and damage by accident or fire alone excepted. * * *

\* \* \* \* \* \*

"Ninth.—The tenant agrees that he will not * * * injure or disfigure the said premises nor any part thereof in any way, nor allow the same to be done and that he will be responsible for the breakage of all glass in the said premises, and agrees to replace the same without delay, regardless of how the same was broken."

On January 3, 1964, J. R. Goldman, secretary of Prudential wrote a letter to Warehouse Distributors confirming a "verbal arrangement" made whereby it was mutually agreed that Prudential would rent the property for a period commencing January 1, 1964, and terminating December 31, 1964, at a monthly rental of $800.00. The letter, which was endorsed "accepted and consented to" by the president of Warehouse Distributors, provided that Prudential would have the option to extend the lease for an additional six-month period, and that in the event the option was exercised, the monthly rental would be reduced to $750.00 retroactive to January 1, 1964. The letter also provided, that except for the change in rent, "all of the terms and conditions of the lease agreement which expired on March 31, 1963 and was thereafter renewed[1] to December 31, 1963, shall remain in full force and effect."

On December 31, 1964, Eugene A. Jaeger, vice president of Prudential wrote Warehouse Distributors a letter "to confirm in writing the verbal arrangements made * * * whereby we take up our option to extend the lease through June 30, 1965." The letter stated: "By virtue of this agreement, we agree to rent these premises from you and you agree to rent these premises to us at a monthly rental of $650.00 per month; payable in advance on the first day of each month starting January 1, 1965." It also contained this statement: "We will assume no further obligation for rental of these premises unless by mutual consent in writing a further extension is requested." This letter was endorsed "accepted and consented to" by Arthur Peregoff, treasurer of Warehouse Distributors.

Peregoff testified that he knew in March 1965, that Prudential was constructing a warehouse of its own; that it intended to move from the leased premises to the new building; that certain problems had arisen causing a delay in the completion of its warehouse, and that Prudential "was supposed to vacate at the termination of the lease [June 30, 1965], not when the warehouse was completed."

Mervin Hoffman, vice president and comptroller of Warehouse Distributors, testified that Prudential paid rent through September

---

[1] The record is silent as to the nature of the renewal of the lease from March 31, 1963, to December 31, 1963.

30, 1965, but continued to occupy the premises beyond that date. He stated that the warehouse was not vacated on September 30, 1965, because there were storage racks, "cartons of various merchandise and just innumerable things that remained there that they had not taken out."

According to Hoffman, he met Jaeger, vice president of Prudential, at the premises on November 26, 1965, and they inspected the warehouse. At that time Jaeger surrendered the keys to the building. All of the merchandise had been removed, but the building had been damaged extensively. (Counsel for plaintiff indicated in his opening statement during the trial that "vandals or unknown parties" caused the damage during October and November, 1965.) Hoffman stated that to the best of his knowledge neither Warehouse Distributors nor any of its officers received notice that Prudential had vacated the premises prior to November 26, 1965.

Stuart R. Parks, superintendent of W. L. Hughes Construction Company, testified that on or about December 16, 1965, he inspected the warehouse and made an estimate of costs to repair the damage at the request of Warehouse Distributors. He described the damage and repair costs thusly:

"I noticed damage to the plumbing and two of the bathrooms which amounted to $270, and I found that some of the glass bricks had been broken out. The amount of damage was $660. The skylights on the roof and windows in the office areas had been broken out. The total damage to that was $1,025. The office panels on the walls and the ceilings had been broken out. The doors had been torn loose from their hinges. The total damage there was $1,077.40. The total amount of the damage that I observed was $3,032.40."

At the conclusion of Park's testimony, plaintiff rested its case. Whereupon, the trial court, after hearing argument by counsel, sustained defendant's motion to strike plaintiff's evidence and entered summary judgment for defendant. As has been stated, this action of the court constitutes plaintiff's sole assignment of error.

[1] The plaintiff contends that when defendant held over after June 30, 1965, it became either a tenant from year to year or a tenant from month to month. On the other hand, defendant says that it has paid to plaintiff all rent to which it is entitled, and because of "special circumstances" the tenancy, if any, created after the alleged hold over was a tenancy at will.

Our first problem is to determine the nature of the relationship which resulted from the hold over by Prudential.

In *Smith* v. *Payne*, 153 Va. 746, 753, 151 S.E. 295, 297 the general rule that governs a hold over by a tenant who has previously rented for a term of years or for one year is stated. There we said:

" 'The uniform view of the American text writers and authorities on the subject, where the doctrine of tenancy from year to year is recognized, is that when a tenant, who has previously rented for a term of years or for one year, holds over possession of premises beyond his original term, *without more*, upon the election of the landlord to hold him as a tenant from year to year, the law implies a contract on the part of the tenant to remain and pay rent as a tenant from year to year.' *Grice* v. *Todd*, 120 Va. 481, 91 S.E. 609, L.R.A. 191D, 512." (Italics supplied.)

However, based upon the evidence before us, we are of opinion that defendant first became a tenant at sufferance when it failed to vacate the premises on June 30, 1965. But because of special circumstances, when plaintiff accepted rent thereafter, defendant became a tenant at will.

A tenancy at sufferance arises when one comes into the possession of property by lawful title, but wrongfully holds over after the termination of his interest. 1 Tiffany, *Landlord and Tenant*, § 15, p. 142; 3 *Thompson on Real Property*, § 1023, p. 51; 1 *Minor on Real Property*, (2nd Ed., Ribble), § 364, p. 471. See also *Restatement, Property*, § 22 (1936). Thus, when defendant remained after the expiration of its lease on June 30, 1965, it immediately became a tenant at sufferance.

"At common law the owner had the option of evicting the tenant at sufferance or of converting his occupancy into another form of tenancy. The same rule generally prevails today. The nature of the new tenancy may be at will, from month to month, from year to year, or it may be a renewal of the original term, *depending on the circumstances*. Ordinarily the owner's option is to renew for the length of the original period. While it is true that a tenant at sufferance can hardly be called a tenant at all, and that his holding is without right of any kind, *yet if a landlord permits him to remain, and especially if he receives rent of him, he then becomes a tenant at will.* * * *" 3 *Thompson on Real Property* at pp. 63, 64 and the cases there cited. (Italics supplied.)

The letter dated December 31, 1964, written by defendant and "accepted and consented to" by plaintiff expressly provided that defendant would "assume no further obligation for rental of these premises unless by mutual consent in writing a further extension is

requested." The record does not show that any such agreement was made. It is clear from this letter that both parties agreed that the lease would terminate on June 30, 1965. The letter is of paramount importance. It relieves defendant from being bound for another term. Without the special provision contained therein a contract for an additional term would have been created by implication upon the election of plaintiff, the landlord.

[2] The plaintiff next contends that defendant is liable for the damage done to the premises prior to November 26, 1965, when the keys to it were surrendered. Warehouse Distributors argues that when Prudential held over, it remained subject to the specific covenants of the original lease, hereinbefore quoted, which in essence require the tenant to keep and to surrender the premises in as good condition as he received them, "reasonable wear and tear and damage by accident or fire alone excepted."

Prudential argues that it is not responsible for any damage to the premises because there has been no showing that any of the damage was caused by its fault or negligence. Defendant relies upon Code, § 55-226, which provides:

"No covenant or promise by a lessee to pay the rent, or that he will keep or leave the premises in good repair, shall have the effect, if the buildings thereon be destroyed by fire or otherwise, in whole or in part, without fault or negligence on his part, or if he be deprived of the possession of the premises by the public enemy, of binding him to make such payment or repair or erect such buildings again, unless there be other words showing it to be the intent of the parties that he should be so bound. But in case of such destruction there shall be a reasonable reduction of the rent for such time as may elapse until there be again upon the premises buildings of as much value to the tenant for his purposes as what may have been so destroyed; and, in case of such deprivation of possession, a like reduction until possession of the premises be restored to him. (Code 1919, § 5180.)"

Section 55-226 has been construed to mean that unless there be "other words showing it to be the intent of the parties that he should be so bound", negligence must be present on the part of the lessee before any recovery can be had against him for damage to the leased premises at the termination of the lease. *Powell* v. *Orphanage*, 148 Va. 331, 354, 355, 138 S.E. 637, 645. Further, the burden of proof is upon the tenant to show that any alleged damage was not caused by his fault or negligence. *Powell* v. *Orphanage, supra*, 148 Va. at 352, 138 S.E. at 644.

The defendant's motion to strike plaintiff's evidence was, in effect, a motion for summary judgment. *Simpson* v. *Taxicab Corporation,* 203 Va. 892, 894, 128 S.E.2d 306, 308. Rule 3:20 of Rules of Court provides, *inter alia,* that summary judgment "shall not be entered if the amount of damages or any other material fact is genuinely in dispute."

Since the trial court struck plaintiff's evidence, it is our duty, under well established principles, to view the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff. Tested by this principle, we cannot say, as a matter of law, that plaintiff's evidence was insufficient to support a recovery either for rent or damages.

The record shows that defendant remained in possession of the premises until November 26, 1965, when it delivered the keys to plaintiff; that the building was damaged at the time, and that no rent had been paid after September, 1965. The burden was on defendant to prove that the damage to the warehouse was not caused by its fault or negligence. *Powell* v. *Orphanage, supra.* This the defendant did not do.

In the "Ninth" clause of the lease, *supra,* Prudential agreed that it would not injure or disfigure the premises in any way, "nor allow the same to be done". There has been no showing that Prudential was free of fault or negligence in either event. In addition, Prudential agreed in the "Ninth" clause that it would "be responsible for the breakage of all glass in the said premises * * * and to replace the same without delay, regardless of how the same was broken." This language shows the intention of the parties that Prudential would be bound for these repairs even though it was free of fault or negligence. § 55-226, *supra.* We hold that the trial court erred in striking plaintiff's evidence and in entering summary judgment for defendant.

Accordingly, the judgment appealed from is reversed and the case remanded for a new trial on all issues.

*Reversed and remanded.*