NORTHFIELD INVESTMENT COMPANY, INC.

V.

UNITED WAY OF AMERICA

Record No. 831953

March 6, 1987

Present: All the Justices

*James R. Tate (Diane H. Mahshie; Tate and Bywater, Ltd.*, on briefs), for appellant.

*Hugh Nugent (Harry P. Hart; Hart, Nugent & Ahearn, P.C.*, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

In this landlord-tenant dispute, the tenant held over after the expiration of the lease, occupying a part of the premises for a part of a month. The landlord sought to recover the contract rent for the entire premises for a full month. The tenant contended that it was liable only for rent prorated for that part of the premises occupied after the expiration of the lease, and prorated for the period of the hold-over occupancy.

In 1980, United Way of America owned a commercial building in Alexandria containing approximately 56,500 square feet of rentable floor space. Planning to erect a larger building across the street and to move into it when completed, United Way sold its original building but leased it back from the purchasers for a period of two years, with an option to extend. The original term of the lease expired June 17, 1982, but was extended by agreement of the parties for two months, to August 17, 1982. During the term, the original purchasers conveyed the property to Northfield Investment Company, Inc., which was United Way's landlord when the extended lease expired.

Northfield had entered into a management contract with Gates-Hudson & Associates, Inc., during the original term. That contract provided that Harold Miller, an attorney, was Northfield's representative with "sole approval and execution power of all leases for the property." The contract further provided that Gates-Hudson had the responsibility to "develop relationships with [prospective tenants], prepare letter proposals, handle on Owner's behalf lease negotiations, 'close the deal' . . . ." All parties, including United Way, had copies of the management contract and were aware of its contents.

United Way, during the original term, had permitted a group called the National Puerto Rican Coalition (NPRC) to occupy a part of the first floor of the building. On August 17, 1982, NPRC occupied 1,980 square feet of space.[1]

In early August 1982, it became apparent to United Way that its new building would not be completed by August 17. Stephen J. Paulachak, a senior vice-president of United Way, telephoned Robert T. Gates, president of Gates-Hudson, and stated that United Way intended to move its operations and personnel out of Northfield's building by August 17, but asked if Northfield would consent to NPRC's continued occupancy of the space it was occupying on the first floor for a two-week period after August 17. Paulachak offered to "pay them a prorata rental for that space." Paulachak testified that Gates responded that "it was no problem and that they would work with us."[2] In reliance on Gates' response, and believing that Gates had authority to bind Northfield, Paulachak caused United Way to vacate the building by August 17, but permitted NPRC to remain until August 30.

On August 19, Gates wrote a letter to Paulachak which stated:

[1] Northfield contends that NPRC was a subtenant, and that United Way was in breach of the lease because it failed to secure the landlord's written consent to the subtenancy as required by the terms of the lease. United Way admits that the subtenancy was unauthorized, but argues that the landlord was aware of NPRC's presence for a long period, made no complaint, and collected rent with full knowledge of NPRC's presence. The trial court found that the circumstances were such as to constitute a waiver, by Northfield, of any default on United Way's part in this regard. Our review of the record satisfies us that this finding is supported by evidence and we will not disturb it on appeal.

[2] Gates' version of this conversation is markedly different. In accordance with familiar principles of appellate review, we will accept that version most favorable to United Way, the party which prevailed in the trial court.

As managing agent for Northfield . . . I wish to inform you that the continued actual occupancy of a portion of the premises . . . constitutes a holdover of tenancy for an additional month. We hereby accept the holdover of occupancy and the tenancy of United Way of America for one additional month, from August 18, 1982 through September 17, 1982.

Paulachak received this letter on August 20th or 21st and immediately telephoned Gates, reminding him of their earlier conversation concerning prorated rent. Paulachak testified that Gates replied that he "had no authority to grant me that request." Gates had not yet secured any new tenants for Northfield.

Northfield brought this action to recover $76,156.85 from United Way for rent at the base contract rate for the entire building for the period August 17 - September 17, plus $3,296.98 for an incremental increase based on the Consumer Price Index pursuant to a clause in the lease, together with attorney fees, interest, costs and damages. United Way conceded liability for rent for 1,980 square feet for 13 days, but denied that it was responsible for a month's rent for the entire building, and counterclaimed for other damages.[3]

After a bench trial, the court issued a letter opinion granting Northfield judgment for $1,160.25 as prorated rent for 1,980 square feet for 13 days. The court also awarded Northfield judgment for the "CPI" increment and certain damages, and awarded United Way judgment on its counterclaim. We awarded Northfield an appeal, in which the sole question is whether the court erred by refusing to award Northfield judgment for a full month's base rent for the entire building.

During a colloquy with counsel at the end of the trial, the court stated: "I think it was reasonable for [United Way] to assume, not hearing anything by the 17th, to think what they had discussed with Mr. Gates was satisfactory." The court added, however, "I don't think he had the actual or apparent authority to grant any extension of the lease without first checking it out with Mr. Miller or some other person that might have been designated by the owner of the premises." The court's letter opinion did not base its holding upon an express agreement between the parties

---

[3] The issues raised by the counterclaim are conceded by Northfield and are not the subject of this appeal.

with respect to a partial holding over, but rather applied Code § 55-223[4] after expressly finding that the holding over "was not due to willfulness, negligence or other avoidable cause."

We agree with the result reached by the trial court although we reach that result by a different path. The trial court's findings of fact, where supported by credible evidence, are conclusive on appeal, *Payne* v. *Simmons*, 232 Va. 379, 383, 350 S.E.2d 637, 639 (1986), but that effect does not extend to the trial court's conclusions of law. *Id.* at 385, 350 S.E.2d at 641.

We therefore accept the finding of fact, implicit in the trial court's comments quoted above, that when Paulachak asked Gates if United Way might hold over 1,980 square feet for a two week period and pay prorated rent therefor, Gates responded affirmatively and United Way held over in reliance upon Gates' response. The trial court's conclusion that Gates lacked actual or apparent authority to bind Northfield to such an acceptance is, however, a conclusion of law based upon interpretation of Gates' management contract. We draw a different conclusion from the terms of that contract. In authorizing Gates-Hudson to "handle on the Owner's behalf lease negotiations" and to " 'close the deal,' " the management contract, in our view, vested Gates-Hudson with actual authority to enter into a binding oral contract on Northfield's behalf with United Way.

No contention is made that Gates, as president of Gates-Hudson, lacked authority to act in Gates-Hudson's behalf with respect to its routine business and no such contention would, in the circumstances, be tenable. *See Pine Beach Co.* v. *Columbia Co.*, 106 Va. 810, 815, 56 S.E. 822, 824 (1907). The management contract's grant to Miller, Northfield's attorney, of "sole approval and execution power of all leases for the property" must be construed, in accordance with familiar principles governing the construction of instruments, to complement other parts of the contract rather than to conflict with them. *See J.M. Turner & Co.* v. *Delaney*, 211 Va. 168, 171-72, 176 S.E.2d 422, 425 (1970); *Hutchison* v. *King*, 206 Va. 619, 624-25, 145 S.E.2d 216, 220

---

[4] Code § 55-223: "A tenant from year to year, month to month, or other definite term, shall not, by his mere failure to vacate the premises upon the expiration of the lease, be held as tenant for another term when such failure is not due to his willfulness, negligence or other avoidable cause, but such tenant shall be liable to the lessor for use and occupation of the premises and also for any loss or damage sustained by the lessor because of such failure to surrender possession at the time stipulated."

(1965). Viewed in that light, we construe the authority granted to Miller as an owner's effort to secure the protection of an attorney's advice with respect to the complex and arcane language often inserted in commercial leases. It need not, and therefore should not, be read to conflict with the grant of authority to Gates, which was not only to negotiate the terms of leases with prospective tenants, but also to "close the deal." We interpret the legal import of the last-quoted phrase to be a grant of authority by a principal to an agent to make a binding commitment on the principal's behalf.

■ As noted above, all parties to the transaction, Northfield, Gates, and United Way, had copies of the management contract and were aware of the exact dimensions of Gates' authority. Accordingly, we conclude that Northfield, through Gates, its agent, entered into a valid parol contract with United Way for the lease of 1,980 square feet for the period August 17 - August 30.

■ Code § 55-223 is inapplicable when a holding over occurs pursuant to an express agreement between landlord and tenant. *See Grice* v. *Todd,* 120 Va. 481, 486, 91 S.E. 609, 610 (1917). (The statute is a codification, only slightly modified, of our holding in *Grice.*) Code § 55-223 comes into play only where the parties have failed to agree upon the terms which are to govern a holding over. Consequently, we do not now reach, but reserve for future decision, the question whether Code § 55-223, where applicable, authorizes the proration of rent for partial occupancy of the premises or for a part of a month.

Having reached the same result as the trial court, we will affirm the judgment.

*Affirmed.*