## CIRCUIT COURT OF THE CITY OF RICHMOND

Fitzhugh Investment Properties

v.

Commonwealth of Virginia,
Department of Rehabilitative Services,
and William E. Landsidle

October 13, 1994

Case No. LX-1842-3

BY JUDGE T. J. MARKOW

This matter came to be heard on September 15, 1994, upon the Demurrer. The following facts are those taken as true from the Motion for Judgment.

The parties entered into a Lease Agreement on January 1, 1989, for a three-story office building and parking lot in the City of Richmond, located at 4901 Fitzhugh Avenue and 4904 Radford Avenue. The lease term was five years, running from November 1, 1988, through October 31, 1993.

The lease included a "Termination Clause" which provided that either party could terminate the lease upon written notice, by certified or registered mail, at least three months prior to October 31, 1993. Failure to comply with the "Termination Clause," would trigger the "Renewal Clause." The "Renewal Clause" provided, "Unless otherwise terminated as herein provided, at the end of the initial term, this lease shall automatically renew and continue in full force and effect from year to year . . . ."

In March and April of 1993, the parties attempted to negotiate terms for Defendant to remain on the premises. However, after negotiations failed, the Defendant gave written notice, by letter dated July 20, 1993, of its intent to terminate the lease. The letter included Defendant's proposal for a month to month lease of the premises, until it could relocate its offices.

The letter has been incorporated into the Motion for Judgment as "Exhibit D." Plaintiff refused Defendant's offer of a month to month tenancy.

Following expiration of the initial lease term, Defendant remained on the premises and paid rent to Plaintiff through February, 1994. Plaintiff contends Defendant's holdover triggered the "Renewal Clause" and it is liable for rent under the terms of a year to year tenancy as described in the Lease Agreement. Further, Plaintiff seeks recovery of attorney's fees and compensation for Defendant's alleged damage to the premises.

Based on the aforementioned facts, the demurrer is sustained as to Count I of the Motion for Judgment. Count I fails to state a claim upon which relief can be granted. The termination clause of the lease at issue states the lease "may be terminated by either party only upon written notice to the other party by certified or registered mail . . . at least three (3) months prior to the expiration of the initial term . . . otherwise this lease shall renew . . . ." The language of the termination clause is clear. Termination requires three elements: written notice, by certified or registered mail, within three months of the term's expiration. Defendant clearly satisfied these three elements by its July 20, 1993, letter. Plaintiff was "definitely and clearly" informed of its intent to terminate the lease as a matter of law. A general notice of termination is sufficient where ground to terminate existed and where there was no contract provision requiring lessee to set forth with particularity the ground on which it relied. *Patterson v. National Advertising Co.*, 213 Va. 562, 193 S.E.2d 676 (1973).

Although Plaintiff alleges Defendant's failure to surrender the keys on October 31, 1993, constituted noncompliance with the termination clause, it is incorrect. The termination clause does not contain as a fourth element a requirement that Defendant return the keys for termination to be effective or even to vacate. Rather, as Defendant argues in its memorandum, and this court agrees, a return of the keys is a duty imposed on the tenant once the lease has expired, per Paragraph "C" of Attachment "1."

Defendant properly terminated the lease as prescribed in the lease agreement. The renewal provision was never triggered and is inapplicable to the present controversy. After the Lease Agreement was terminated and the Defendant remained on the premises a tenancy at will was created. In a hold-over situation, until a landlord takes action, the tenant is a tenant at sufferance. The landlord has the right to elect whether to allow the tenant to remain or to treat the tenant as a trespasser. *Grice v. Todd*, 120 Va. 481, 91 S.E. 609 (1917). The holding of *Grice* is codified in Va. Code § 55-223.

In *Grice* the tenant held over for three days because he could not acquire wagons to move his belongings. In determining whether to hold the tenant to a new year-year lease the Virginia Supreme Court articulated the issue as whether the situation of the parties, which was known to each other, and their conduct, was such that the law will imply a contract or obligation on the part of the tenant to hold over as a tenant from year to year. *Grice*, 91 S.E. at 610.

In the present case, the Defendant's held over for four months after failed attempts to negotiate a month-month lease with the Plaintiff. The present Defendant is similar to the defendant in *Grice* whose failure to move was described by the court as an involuntary act. The Commonwealth remained on the premises due to its inability to relocate by October 31, 1993. Once relocation was possible, albeit four months after the termination of the original lease term, the Defendant vacated the premises.

Applying the standard as articulated in *Grice*, the present circumstances, as known to both parties, is not such that the law should imply an obligation on the tenant of another year-year lease. The Plaintiff was aware that the Defendant's holdover was a consequence of its inability to find a new space, and as such not indicative of a desire to be bound to a new year-year term.

Further, Plaintiff accepted rent payments from the Defendant for the four months that it remained on the premises. Quoting Thompson on Real Property, the Virginia Supreme Court in *Warehouse Distributors, Inc. v. Prudential Storage and Van Corp.*, 208 Va. 784, 161 S.E.2d 86 (1968), said:

> While it is true that a tenancy at sufferance can hardly be called
> a tenancy at all, and that his holding is without right of any kind,
> yet if a landlord permits him to remain, and especially if he
> receives rent from him, he then becomes a tenant at will.

161 S.E.2d at 89. The facts of *Warehouse Distributors* are similar to the present case. The tenants in *Warehouse Distributors* held over for five months following the termination of their lease extension agreement. The final extension agreement stated the tenant would "assume no further obligation for the rental of these premises unless by mutual consent in writing . . . ." The Court held, absent such a writing, along with the fact the landlord accepted rent payments, a tenancy at will was created. The defendants in *Warehouse Distributors* were entitled to vacate the premises and cease rent payments when they desired.

The present lease contains a "Modification Clause" which states "the lease agreement shall not be modified, altered, or amended except by written agreement executed by the parties hereto with the same formality as this agreement." The present "Modification Clause" is analogous to the clause relied on by the *Warehouse Distributors* court. Both clauses prevent the lessee from being bound to further obligations to the landlord in the absence of a subsequent written agreement. In both cases rent payments were made and accepted for the holdover terms. Just as in *Warehouse Distributors*, this court finds that a tenancy at will was created and that the Commonwealth is not responsible for any further rent. Accordingly, the demurrer is sustained as to Count I, without leave to amend.

The demurrer is also sustained as to Count II of the Motion for Judgment. Plaintiff fails to allege that a statement was provided to Defendant of damages to the premises, which is a precondition to its recovery as provided in the Lease Agreement. Paragraph "C" of Attachment "1" provides:

> Should Lessee fail to perform such repairs or replacements, Lessor may do so, after ten days written notice . . . and the cost of such repairs or replacements shall become collectible as additional rent hereunder and shall be paid by Lessee within ten days after presentation of a statement therefor.

The Motion for Judgment references a letter sent to the Defendant indicating a monetary demand for damages, but fails to provide details as to how the figure was determined. Based on the Motion for Judgment and Exhibit "I" as incorporated in the pleading, Plaintiff has failed to comply with the lease in its demand for damages. Accordingly, the demurrer as to Count II is sustained, with leave to amend.

Based on the facts alleged in the Motion for Judgment, Plaintiff is not entitled to a claim for attorney's fees. Plaintiff alleges in the Motion for Judgment that it is entitled to recover attorney's fees "as provided by the Lease Agreement." Attorney's fees are referenced once in the lease. Paragraph "L" of Attachment "1" provides that upon default, Plaintiff may reenter and relet the premises and that "the proceeds of such reletting during the term of the Lease shall be applied first to all expenses occasioned by such reletting (including, without limitation, attorney's fees . . .)."

The language of the lease agreement clearly indicates that attorney's fees are recoverable when occasioned by Defendant's default and Plain-

tiff's reletting the premises. The Motion for Judgment fails to allege the premises were relet or that the attorney's fees were a consequence of attempts to relet. Based on the language of the lease and the facts as set forth in the Motion for Judgment, Plaintiff is not entitled to attorney's fees.

Finally, the court notes, as both parties seem to agree, that Defendant William E. Landsidle may only be sued in his official capacity as Comptroller of the Commonwealth of Virginia.

The facts as evidenced by the Motion for Judgment and the Exhibits as incorporated fail to support Plaintiff's legal conclusions. The demurrer is sustained as to Counts I and II, with leave to amend only Count II.