# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## BALTIMORE DENTAL ASSOCIATION V. FULLER.

### June 18, 1903.

1. LANDLORD AND TENANT—*Notice to Quit.*—A notice to terminate a tenancy must be explicit and positive. A conditional notice is not sufficient. A notice to tenant that unless certain repairs are made and assurances given, the landlord will not renew a lease is conditional, and not sufficient to terminate a lease.

2. LANDLORD AND TENANT—*Notice to Quit—Insufficiency of Notice—Estoppel by Conduct.*—A tenant may be estopped by his acts from denying the sufficiency of an otherwise insufficient notice, but in such case the estoppel can only arise where the conduct of the tenant has been such as to mislead the landlord to his prejudice.

3. LANDLORD AND TENANT—*Tenancy from Year to Year—Notice to Quit—When to Be Given.*—The notice to terminate a tenancy from year to year in a city must be in writing, and given three months prior to the termination of some year of the term.

4. INSTRUCTIONS—*Evidence to Support.*—It is error to give instructions in the absence of any evidence tending to support them.

Error to a judgment of the Corporation Court of the city of Roanoke rendered September 5, 1902, in an action of unlawful detainer wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Scott & Staples* and *H. M. Ford,* for the plaintiff in error.

*Moomaw & Woods,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Fuller instituted an action of unlawful detainer in the Corporation Court for the city of Roanoke, in which he complains that one B. Dobson, trading as the Baltimore Dental Association, unlawfully withheld from him certain premises known as rooms 10 and 11 in the Tipton Law Building in the city of Roanoke. The defendant pleaded not guilty, and there was a verdict of the jury against him, upon which the court entered judgment. Upon the petition of the defendant a writ of error was awarded him by one of the judges of this court, and the case is now before us upon errors assigned in that petition.

It appears that in July, 1899, Fuller rented to the defendant the premises in dispute for the term of one year at a rental of $120 per year, payable in monthly installments of $10 each. The defendant took possession of the premises on the 24th of July, and has continued to hold the same without any further contract or agreement, and has paid all the rent accruing thereon up to the 24th of July, 1902. It thus appears that after the expiration of the first year of the lease the tenancy became one from year to year, and that the defendant was entitled to a notice to quit under the statute. Some disagreement having arisen between the plaintiff and defendant with respect to replacing glass which had been broken in the doors and windows upon the premises, the landlord requiring the tenant to make the repairs, and the tenant failing to do so in compliance with the demand, on March 7, 1902, one Gregory, acting as the agent of Fuller, addressed a letter to the Baltimore Dental Association as follows:

"On account of your failure to repair the damage done by the manager of your office or your employees to one front window and one glass door of the rooms occupied by you, and on account of the great annoyance you have caused the Snyder-Stoll Co. by allowing water to run down in their store, damag-

ing their goods, on numerous occasions, I beg to advise you that, if the broken glass is not replaced promptly, and satisfactory assurance given that there will be no further annoyance to the Snyder-Stoll Co. by your allowing water to run down on them from your premises, I shall not wish to renew your lease after the expiration of the current year, which, as you know, expires with the 23d day of July, 1902."

And on May 15th the following letter:

"I wrote you on the 7th of March that, unless you promptly repaired the damage to the office occupied by you—namely, one window pane broken in the front window and one glass broken in the door of your back room—and then gave satisfactory assurance that you would not allow water to run down on the Snyder-Stoll Co. again, I would not wish to renew your lease at the expiration of the current year on July 23, 1902. As you failed to comply with the requirements in that notice, I hereby give you formal notice that you thereby forfeited your right to renew your lease after the expiration of the current year, and that I shall then require the premises to be surrendered in as good order and repair as they were when you entered upon them, reasonable wear and tear alone excepted, and that does not include the breaking of glass in the windows and doors."

On May 16th the Baltimore Dental Association, through Dobson, its president, wrote a letter to Gregory, in which he denies having received the letter of March 7th, or that he had ever heard of any complaint from the Snyder-Stoll Company, adding: "Therefore, I shall take no cognizance of the same, but I am always willing to pay any damages caused by the negligence of my employees, and will have the glass repaired when I get time to go to Roanoke, which I hope will be in a few days."

The letter of March 7th, granting that it was received by the defendant, was not sufficient notice to quit. It was conditional,

while it is well settled that the notice to terminate a tenancy must be explicit and positive. Taylor's Landlord & ·Ten., sec. 483.

It may be conceded that a tenant may be estopped by his acts from denying the sufficiency of an otherwise insufficient notice, but, if that be so, the estopel can only arise where the conduct of the tenant has been such as to mislead the landlord to his prejudice. The tenant in this case was entitled to three months' notice to quit. That notice, under the facts of this case, must have been given three months before the 24th day of July; that is to say, on or before the 24th day of April, 1902. The notice of March 7th being insufficient, we are unable to discover anything said or done by the defendant which induced the plaintiff to rely upon that notice, and caused the failure to give a sufficient notice within the time prescribed by law. On the contrary, the conduct of the parties, the communications, verbal and written, which appear in the record as having taken place between plaintiff and defendant, and which are claimed as operating to estop the defendant to set up a want of notice, all took place subsequent to the 24th day of April, and could not, therefore, have been prejudicial to the plaintiff.

Upon the trial the court was asked by the defendant to instruct the jury as follows:

"The court instructs the jury that if they believe from the evidence that in June or July, 1899, the plaintiff leased to the defendant the premises in question for one year commencing July 24, 1899, and that thereafter the defendant remained in possession from that time to the present, without any further contract, the law converts the tenancy into a lease from year to year, and it can only be determined by the plaintiff by a notice in writing, given by the plaintiff to the defendant ninety days before the 24th of July, of any year."

The court refused to give the instruction as asked for by the defendant, but amended the same by adding thereto the words,

"or by acts of both parties," and, further, of its own motion instructed the jury as follows:

"The court instructs the jury that, notwithstanding the notices given by the plaintiff to the defendant to surrender the premises were insufficient to terminate the lease in question, yet if the jury believe from the evidence that, after receiving said notice, it became the defendant's intention to surrender the premises in accordance with said notice, and he, by words or conduct, communicated such intention to the plaintiff or his agent, then the defendant is held to have waived his right to demand the three-months' notice as required by law."

We are of opinion, for reasons already sufficiently stated, that instruction No. 1 should have been given as asked for by defendant, and that the facts of the case do not warrant the amendment thereto, or the instruction given by the court of its own motion.

Upon the whole case, we are of opinion that the judgment of the Hustings Court must be reversed.

*Reversed.*