# Richmond

## C. B. Antrim's Executor v. Wm. H. Parker.

March 24, 1932.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*William T. Muse* and *Shewmake & Gary,* for the appellant.

*Hill Montague & Son,* for the appellee.

GREGORY, J., delivered the opinion of the court.

This proceeding was instituted by Dr. Wm. H. Parker. He filed, in the lower court, a petition asking that a declaratory decree be entered, under chapter 254-A of the Code, which has reference to declaratory judgments and decrees, adjudicating certain controverted rights which arose under the construction of a certain lease. The State Planters Bank and Trust Company, as executor of C. B. Antrim, was made defendant and in due time filed its answer. The proceeding was heard upon the petition, the answer, the lease and certain correspondence which constituted the only evidence submitted and considered by the court and after a hearing the lower court decreed in favor of Dr. Parker and held that inasmuch as C. B. Antrim had failed to give Dr. Parker a sufficient notice to quit the tenancy, the same continued for another year. The executor of C. B. Antrim is here appealing from that decree.

Dr. Parker, being the owner of the Berkley Apartments in Richmond, did, on June 12, 1929, by written lease executed by him, lease to C. B. Antrim, Apartment 2. Antrim also executed the lease and under it his term began on September 1, 1929, and ended on August 31, 1930. The rental was fixed at $2,100.00, a year, payable monthly at the rate of $175.00.

Clause 13 of the lease provided for the notice necessary to secure the possession of the apartment by the landlord as well as the notice necessary to be give by the tenant in event he desired to vacate it at the end of his term. Clause 13 is as follows:

"That should the lessee desire to vacate the premises at the expiration of this lease, he shall give written notice to the owner or his duly authorized agent, at least three months prior thereto, should the owner desire possession of the premises at the expiration of this lease, then like notice shall be given the lessee. Should no such notice be given by either party to the other, then this lease shall continue in force from year to year subject to all agreements and conditions contained in this lease."

On May 30, 1930, one day before the last day on which notice could be given under the provisions of clause 13 of the lease, the following letter was written by Mrs. C. B. Antrim to Dr. Parker and received by him on May 31, 1930:

"May 30, 1930.

"MY DEAR DR. PARKER:

"I fear that we cannot sign up for this apartment for another year, which as a physician you'll appreciate. Dr. Alex Brown tells me, that Mr. Antrim is seriously ill and he fears cannot live another year. I feel utterly helpless, and hopeless. Will you however give me the first option on this apartment should you have a real offer to rent it to some other party. (If you remember no one applied for it last year after we advertised it for rent.)

"The 'Putney House' next door has been rented (the workmen tell me) for a boarding house. This is an awful drawback to this apartment, as all of our windows will have to be kept closed or heavily curtained, and the joy of the hall spoiled. We will (if you agree) keep the apartment as long as Mr. Antrim's health permits, by the month, and will only ask a very few improvements (all much needed).

"Doctors, as you know, make mistakes and Mr. Antrim may live on a year or two but it doesn't seem possible, he's so changed you'd scarcely know him.

"Sincerely yours,
"MRS. C. B. ANTRIM."

It will be observed that the letter was written by Mrs. C. B. Antrim and not by C. B. Antrim who actually signed the lease. So far as the decision of this case is concerned it may be conceded that in writing the letter Mrs. Antrim was acting under the authority of C. B. Antrim and as his agent.

The only point to be decided by this court in this proceeding is whether the letter of May 30, 1930, above set out was a sufficient notice under the lease to the landlord of the intention of the tenant to vacate the apartment at the expiration of the lease.

In *Gardner* v. *Ingram,* 61 Law Times (N. S.) 729, an English case, Justice Bowen in discussing the essentials of a valid notice from the tenant to the landlord which would be sufficient to terminate a lease, says:

"I think it is very necessary that in a notice to quit there should be plainness of speech—that is, it must be plain and unequivocal in its terms, leaving no doubt as to the intention of the party giving it. The effect of such a notice is to put an end to the relation of landlord and tenant, therefore the landlord has a right to know whether the tenant is really going or not. If, instead of adopting that course, the tenant uses language which is ambiguous, makes use of expressions which leave matters at the conclusion of the term contingent on something to be done or some arrangement to be made, there is no sufficient notice to quit. We are asked to place a business construction upon this notice; in my opinion there was no business intended by it. The tenant used language on which the landlord could not safely act."

In *Kellam* v. *Belote*, 122 Va. 537, 95 S. E. 453, the notice was held insufficient. It was further held that the notice to terminate must be explicit and positive and that a conditional notice is not sufficient.

In *Baltimore Dental Ass'n* v. *Fuller*, 101 Va. 627, 44 S. E. 771, 772, this notice was held insufficient to terminate a lease:

"On account of your failure to repair the damage done by the manager of your office or your employees to one front window and one glass door of the rooms occupied by you, and on account of the great annoyance you have caused the Snyder-Stoll Company by allowing water to run down in their store, damaging their goods, on numerous occasions, I beg to advise you that, if the broken glass is not replaced promptly, and satisfactory assurance given that there will be no further annoyance to the Snyder-Stoll Company by allowing water to run down on them from your premises, I shall not wish to renew your lease after the expiration of the current year, which, as you know, expires with the 23d day of July, 1902." This court held that the notice was not a sufficient notice to quit. It was conditional, while it is well settled that the notice to terminate a tenancy must be explicit and positive, and cited *Taylor's Landlord & Ten.*, section 483.

Applying the principles set forth in the cases referred to we must conclude that the letter of May 30th was not a sufficient notice to terminate the lease. It did not unconditionally and unequivocally express an intention to vacate the apartment at the end of the term. At most it was but an expression of a desire and not the expression of a clear and definite purpose to end the tenancy. It left a fair doubt as to the intention and meaning of C. B. Antrim and under it Dr. Parker could not have acted in safety.

We affirm the decree of the lower court.

*Affirmed.*