# Richmond

## Edward C. Epes v. Napoleon Palmieri.

April 26, 1943.

Record No. 2656.

Present, Campbell, C. J., and Holt, Hudgins, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Charles W. Crowder*, for the plaintiff in error.

*Wellford & Taylor* and *Hunter H. Watson*, for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action by notice of motion was brought by Napoleon Palmieri, plaintiff, against Edward C. Epes, defendant, to recover the principal sum of $455 with interest, due plaintiff for rent, as alleged in the notice. There was a trial by a jury which resulted in a verdict for defendant. Upon motion of plaintiff, the verdict was set aside and a judgment in favor of plaintiff in the principal sum of $455 with interest, was entered by the court.

This action of the court, for reasons hereinafter stated, is assigned as error.

The plaintiff is the owner of a six-acre tract of land situated on Montrose avenue in the city of Richmond, upon which is a stucco dwelling house. By lease, under date of April 9, 1937, the said premises were leased to defendant for a period of three years from the first day of September, 1937, to the thirty-first day of August, 1940.

The lease is in the usual form, placing upon the lessee all burdens relative to the upkeep of the premises, except that the lessor was to maintain the furnace in proper condition for all heating purposes. The lease also contained this clause:

"Written notice of three months shall be given by the said lessee should he desire to vacate said premises at the termination of this lease—Viz., on the 31st day of August, 1940, and should the said lessor desire possession, a like notice shall be required."

According to the contention of defendant, the plaintiff was for several months derelict in the performance of his part of this contractual duty and on January 17, 1940, the

defendant wrote the plaintiff's agent a letter setting forth the condition of the heating plant, his efforts to induce plaintiff to remedy same, and concluded his letter with this statement:

"This is to notify you that I disclaim any responsibility affecting the upkeep of furnace or any other damage to the heating and water system which is old and in bad condition, except of course, any for which I am negligent.

"During this time my Wife and Family, which consists of several small children, suffered greatly as a result of the cold weather and under the circumstances, I consider my lease as being broken by your failure to act, and I expect to move as soon as I can find a new location; however, will pay the agreed rental as long as I occupy the premises."

On January 18, 1940, plaintiff's agent replied thereto as follows:

"Dear Mr. Epes:

"We have your letter of January 17th with reference to the furnace grates in premises, No. 4000 Montrose Avenue. The contents of this letter are noted and we have discussed the matter with the owner, Mr. N. Palmieri.

"In reply, we wish to put you on notice that we will expect you to live up to the terms of your lease, which expires August 31st, 1940."

Thereafter, the defendant continued to occupy the premises, paying his rent through July by checks upon which was this notation: "As per letter January 17, 1940." These checks the agent accepted and used.

On August 1, 1940, defendant sent plaintiff's agent a check bearing this notation: "This is in full payment of lease expiring Sept. 1, which will be vacated on or before that date."

Plaintiff's agent refused to accept this check and notified defendant that the lease renewed itself for twelve months from September 1, 1940, to August 31, 1941, and that defendant would be expected to abide by the terms of said lease.

On these facts the court was of opinion that, contrary to contention of defendant, there was no substituted agreement upon the part of plaintiff to end the contract; that there was no waiver of notice by plaintiff as to its termination; that the relationship of landlord and tenant had not expired and therefore, the determinative question was one of law for the court and not one of fact for the jury.

We are in thorough accord with this conclusion of the trial court. The clause in the lease relative to the giving of notice, either to extend or to terminate the lease, is mandatory.

To constitute a legal notice under this clause, the language must be "explicit and positive." *Baltimore Dental Ass'n* v. *Fuller*, 101 Va. 627, 44 S. E. 771.

In *Antrim's Ex'r* v. *Parker*, 158 Va. 1, 163 S. E. 71, Mr. Justice Gregory quotes with approval the rule stated in *Gardner* v. *Ingram*, 61 Law Times (N. S.) 729. In that case, this is said: "I think it is very necessary that in a notice to quit there should be plainness of speech—that is, it must be plain and unequivocal in its terms, leaving no doubt as to the intention of the party giving it. The effect of such a notice is to put an end to the relation of landlord and tenant, therefore the landlord has a right to know whether the tenant is really going or not. If, instead of adopting that course, the tenant uses language which is ambiguous, makes use of expressions which leave matters at the conclusion of the term contingent on something to be done or some arrangement to be made, there is no sufficient notice to quit. We are asked to place a business construction upon this notice; in my opinion there was no business intended by it. The tenant used language on which the landlord could not safely act."

When tested by this rule, the notice given by the defendant, as set forth in the letter of January 17, 1940, falls far short of being a legal notice. It is not explicit. It is not positive. It is equivocal, and, further, it sets forth a condition which might or might not have come into being,

viz., the realization of defendant's "expectation to move" when, if ever, he found a "new location." As stated in the *Antrim case, supra*, it left a fair doubt as to the intention and meaning of defendant, and under it, plaintiff could not have acted in safety.

Let us reverse the situation of the parties. If plaintiff had construed defendant's letter as a notice of termination of the lease and had re-leased the premises to another, and defendant had changed his mind in regard to "moving," then, if the contention of defendant be sound, plaintiff would have been liable for damages for his breach of contract to the subsequent lessee. However, it is argued by defendant that plaintiff waived the giving of further notice by reason of the language:

"In reply, we wish to put you on notice that we will expect you to live up to the terms of *your lease*, which *expires August 31st, 1940*." (Italics supplied).

Instead of importing a waiver, the language explicitly warns defendant that he would be expected to live up to the terms of the lease.

The pivotal term in the contract was "notice;" the language "which expires August 31st, 1940," is merely a description of the termination of the lease.

Upon the whole case, we are of opinion that the judgment must be affirmed.

*Affirmed.*