# Richmond

## H. N. Patterson and Lena J. Patterson v. National Advertising Company.

January 15, 1973.

Record No. 7993.

Present, Snead, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*Benjamin H. Woodbridge, Jr. (Cox, Woodbridge and Smith,* on brief), for plaintiffs in error.

*John C. Cowan (Franklin, Williams & Cowan,* on brief) for defendant in error.

Harman, J., delivered the opinion of the court.

This writ of error challenges the findings of the trial court in an action for damages brought by H. N. Patterson and Lena J. Patterson (Pattersons or plaintiffs) against National Advertising Company (National or defendant) alleging the breach of four separate agreements between the Pattersons and National leasing four locations in Spotsylvania County for the purpose of erecting and maintaining

advertising displays or billboards. The trial court, sitting without a jury, found that the contracts had been terminated under an identical provision found in each of them and entered judgment for the defendant.

Plaintiffs challenge the sufficiency of the evidence to establish National's right to terminate the contracts and the legal sufficiency of the written notice of termination given to the Pattersons by National.

All of the leases were on printed forms provided by National. Three of them were for a term commencing on September 1, 1969, and provided a yearly rental of $60.00 per year "for such periods of time as the display(s) contemplated hereunder is (are) not in advertising position and at a rate of $600.00 per year for such periods of time as the display(s) contemplated hereunder is (are) in position." A handwritten amendment to these three leases provided "Full rental must be paid effective 9/1/70."

The fourth lease provided for a yearly rental of $600.00 per year only "for such periods of time as the display(s) contemplated hereunder is (are) in position."

Each of the four agreements contained an identical provision allowing National to terminate the lease "by giving the Lessor(s) fifteen (15) days written notice" if National was "unable, for a period of ninety (90) consecutive days or more, to secure and maintain a suitable advertising contract for the displays."

On August 4, 1970, National notified the Pattersons that it was terminating the leases. This notice was received by the Pattersons on August 6 or 7.

The evidence is uncontroverted that no signs were ever constructed by National at any of the four locations.

Since National prevailed in the trial court, we must view the evidence in the light most favorable to it.

This evidence shows that National prepared diagrams and made surveys and photographs of each of the sites in September, 1969. The construction cost at each site was estimated, permits were obtained and an asking price for rental of each of the billboards was established. After this material was compiled, a presentation of the site with photographs was prepared and sent to six salesmen employed by National. These salesmen were instructed to insert this material in their "book" for display to prospective customers. Two of the six salesmen testified that they displayed the promotional material on the sites in question to prospective customers.

Steven Kurtz testified that he usually made thirty calls a day and averaged obtaining ten interviews. He further testified he proposed the sites to prospective customers "on numerous occasions" and was unsuccessful in leasing them. His testimony related the names of three specific customers on whom he had called for the purpose of proposing these particular sites.

Another salesman, Curtis Rimler, testified that he began attempting to sell the sites in October and that his "concerted" effort continued through November and December and "possibly" into the early part of 1970. His testimony disclosed that on six or seven occasions he took prospective lessees of the billboards to Spotsylvania County to view the locations.

One of National's executives related that he had proposed leasing these sites to the national advertising agency for a major oil company on two occasions and that his proposal was rejected.

■ The plaintiffs first argue that the contracts inferentially required National to erect the billboards as a prerequisite to any effort on the part of National to sell them. That such an interpretation is a strained and unreasonable one becomes apparent when one looks at the provisions of the leases providing a different rental when the billboards were in place as opposed to when they were not. Such an interpretation would also overlook that the fourth agreement provided for no rental unless the advertising display was in position.

■ The plaintiffs next argue that the evidence fails to establish that National was entitled to terminate because it had unsuccessfully attempted to sell advertising space on the billboards during a period of ninety consecutive days or more.

While the evidence as to dates when National's representatives called upon prospective customers was not as explicit as it might have been, the trial court heard and observed the witnesses at trial. In its order the trial court found "that the defendant made reasonable efforts to sell the advertising location [and] that their efforts were to no avail." We find the evidence, particularly the evidence of Curtis Rimler, and the reasonable inferences therefrom sufficient to establish that National's promotion and attempted sale of the sites continued for the requisite period of ninety days or more.

■ Finally, the plaintiffs argue that the written termination notice from National to the Pattersons was legally insufficient because this notice failed to state the specific grounds for termination.

National's notice to the Pattersons, in pertinent part, read as fol-

lows: "Due to unforeseen circumstances, we find it necessary to terminate our lease agreements listed above."

Plaintiffs argue that National could not terminate the leases at will. They say it was required to set forth in the notice the particular grounds upon which it relied to bring itself within the termination clause of the lease agreements. To support this position they rely on *Epes* v. *Palmieri*, 181 Va. 332, 25 S.E. 2d 279 (1943), and *Antrim's Ex'r.* v. *Parker*, 158 Va. 1, 163 S.E. 71 (1932).

We find this reliance to be misplaced. The holding of these cases is that a notice to terminate the landlord and tenant relationship must be clear and unequivocal, leaving no doubt as to the intention of the party giving it.

The notice given here by National was such a clear and unequivocal notice to quit and, in the absence of a contract provision requiring National to set forth with particularity the ground it relied upon to terminate, had the effect of terminating the agreements.

*Affirmed.*